UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim **No. 1:13CR10111-3** |
| | ) | |
| HARRY PARSONS | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Harry Parsons' participation in the instant conspiracy, as represented by a singular "brokerage" of heroin distribution, was emblematic of his inability to break his struggle with his criminally addictive behavior brought about by his undisputable and dysfunctional childhood and teenage years.   For the reasons that follow, Harry Parsons submits that a sentence of 48 months' imprisonment, with a three-year period of supervised released that include specific conditions to address the defendant's substance abuse and addictive conduct to follow is consistent with the factors set forth in 18 U.S.C. § 3553 (a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing.  United States v. Kimbrough, 128 S.Ct. 558 (2007); United States v. Booker, 125 S.Ct. 738 (2005); United States v. Martin, 520 F.3d 87 (1st Cir. 2008); United States v. Rodriguez, 527 F.3d 221 (1st Cir. 2008).

## BACKGROUND

The defendant's childhood and personal circumstances are thoroughly detailed in the Presentence Report.  While acknowledging

acceptance of responsibility for his own decisions to participate in criminal behavior, the defendant's late childhood and early teenage years were bereft of meaningful and non-criminal adult guidance and, coupled with untreated mental health concerns, unquestionably contributed to his lack of self-awareness and control.  The defendant self-medicated his pain by experimenting with, and then abusing a number of illicit narcotics and alcohol that contributed to events that created a juvenile and then adult criminal record that is notable for the number of misdemeanor and minor felony offenses that underscore negative behaviors, many of which were dismissed.

## The Investigation Leading to This Indictment

The investigation and ultimate prosecution of Harry Parsons was a product of the year-long investigation against Francisco Monteiro prior to his single act of distribution in the conspiracy.  In 2012, the DEA began an investigation into suspected drug trafficking by Francisco Monteiro.  On February 15, 2013, at the bequest of Manuel Lopes, a childhood friend and co-conspirator of Monteiro, Harry Parsons provided the use of his apartment in order to facilitate the sale of heroin from a cooperating witness to Lopes on behalf of Monteiro.  For this service, Harry Parsons received some heroin as barter to support his addiction and provide the basis for this prosecution.  On April 18, 2013, after confirming the identification of Mr. Parsons, he was arrested at his apartment.  Agents seized a small quantity of heroin, syringes, razors and hypodermic

needles consistent with personal use inside the apartment.

## Mental Health and Substance Abuse Issues

As detailed in his Presentencing Report, Harry Parsons was largely raised by a mother who abused crack cocaine, heroin and Percoset pills and an absentee father who, when not abusing alcohol and crack cocaine, was incarcerated for criminal offenses.  At the time of the instant offense, Mr. Parsons was consuming a pint of Hennessey twice weekly, smoking marijuana daily, and injecting one gram of heroin daily.   After his arrest on the instant offense, based upon the severity of his addiction, Mr. Parsons was enrolled in Spectrum's residential in-patient program but was terminated for disciplinary problems.  On January 31, 2014, Mr. Parsons overdosed on heroin and was admitted to St. Luke's Hospital emergently.  Thereafter, upon discharge, he was arrested and has been since detained.

Although Mr. Parsons' criminal history underscores the detritus of his own addictions of alcohol and heroin, Mr. Parsons had been taking positive steps in changing his life prior to his arrest.  He met and married Gina Barbosa, a woman who has been his main support and who has been a driving influence in helping Mr. Parsons to commit to a healthy and sober lifestyle.  They have a three-year old son together, and Mr. Parsons has a seven-year old son from a prior relationship who he was raising prior to his incarceration for this case.  Mr. Parsons acknowledges that he has undiagnosed mental health issues, particularly bipolar

disorder (that runs in his family), depression and attention deficit hyperactivity disorder, and was likely self-medicating with illicit substances and alcohol to deal with these mental health conditions. Mr. Parsons feels that he would benefit from a comprehensive mental health evaluation and treatment for his mental health issues and substance abuse upon release.

Mr. Parsons has been employed off and on as a carpenter and has available employment upon his discharge.

**ARGUMENT**

**Offense Level Computation**

**Mr. Parsons' conviction for Resisting Arrest should not qualify him for career offender application pursuant to 37 U.S.S.G. §4B1.1**

The crime of resisting arrest, like a series of recent cases[1], should not constitute a violent felony under 37 U.S.S.G. §4B1.1 of the Career Offender statute, an onerous recidivist statute that increases both the minimum and maximum penalties applicable to a person convicted of certain violent felonies.

The career offender provision of the sentencing guidelines, USSG §§ 4B1.1 and 4B1.2, typically requires a much longer sentence than would otherwise be imposed if (1) the instant federal offense is either a

---

[1] See <u>Taylor v. United States</u>, 495 U.S. 575 (1990); <u>Shepard v. United States</u>, 544 U.S. 13 (2005); <u>James v. United States</u>, 550 U.S. 192 (2007); <u>Begay v. United States</u>, 553 U.S. 137 (2008); <u>Chambers v. United States</u>, 555 U.S. 122 (2009); <u>Johnson v. United States</u>, 559 U.S. 133 (2010);

crime of violence or controlled substance offense and (2) the defendant has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a)(2).  The career offender guideline defines a "crime of violence" at § 4B1.2(a) as: any federal or state offense that is punishable by a term of imprisonment exceeding one year, and that -- (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Clause (i) of § 924(e)(2)(B) clause (1) of § 4B1.2(a) is sometimes referred to as the "force" or "elemental" clause.  Clause (ii) or (2) is sometimes referred to as the "residual" or "otherwise" clause.  In United States v. Mangos, 134 F.3d 460, 464 (1st Cir. 1998), the defendant challenged the district court's determination that his assault and battery conviction was a crime of violence.  The defendant argued that Massachusetts common law recognizes at least two forms of assault and battery: harmful battery and offensive battery.  He argued that while harmful battery may be a crime of violence, offensive battery is not; he argued further that under the categorical approach required by Taylor, supra at 602, the court could not determine whether he was convicted of an offensive battery as opposed to a harmful battery, and the conviction therefore could not be considered a crime of violence.

The First Circuit rejected the defendant's argument.  The court first intimated that an offensive battery may be a crime of violence under the residual clause, but held that in any event the language "did assault and beat" alleged a harmful battery, and a harmful battery is a crime of violence under the force clause. Id at 464.   The First Circuit reaffirmed that "did assault and beat" alleges harmful battery on multiple occasions.  See United States v. Rivera, 562 F.3d 1, 2 (1st Cir.2009); United States v. Holloway, 499 F.3d 114, 118 (1st Cir.2007); United States v. Estevez, 419 F.3d 77, 82 (1st Cir.2005); United States v. Santos, 363 F.3d 19, 23 (1st Cir.2004).

However, in Johnson v. United States, 130 S.Ct. 1265 (2010), the Supreme Court considered whether a Florida battery is a violent felony under the ACCA.  Under Florida law, to which the Supreme Court explicitly deferred, a battery in Florida may be committed in one of three ways: the defendant may (1) intentionally cause bodily harm, (2) intentionally strike the victim, or (3) merely actually and intentionally touch the victim.  Because the Shepard-approved record failed to disclose under which theory Johnson was prosecuted, the Court assumed he was convicted under the least of the three theories: actually and intentionally touching another person.  The issue thus became whether the actual and intentional touching of another person constitutes the use of "physical force" within the meaning of § 924(e)(2)(B)(i).  The Court concluded that the term "physical force" means

6

"violent force – that is force capable of causing physical pain or injury to another person." Id at 1271 (emphasis in original).  The Court reasoned that even though an unwanted touching constituted "physical force" under common law battery, it must interpret the phrase "physical force" in subparagraph (i) in context – that is, as defining what is and is not a "violent felony" for purposes of the ACCA. Id.  The Court determined that a "violent felony" necessarily required strong physical force, because the term "violent . . . connotes a substantial degree of force" and when attached to the term "felony, its connotation of strong physical force is even clearer." Id.

After Johnson, the vulnerability of the Mangos line of cases became apparent.  For example, by simple analogy, Johnson seemed to require that a Massachusetts "offensive touching" battery does not constitute a violent felony, at least not under the force clause.

The First Circuit so ruled in United States v. Holloway, 630 F.3d 252, 252, 261 (1st Cir. 2011).  The court viewed Johnson as clarification that federal courts must use state court constructions of state law in considering whether a state offense should be considered a violent felony. Holloway, supra at 258.  The court found that it had "indirectly" run afoul of this principal in Mangos. Id.  It recognized that "did assault and beat" is boilerplate language, derived from a pleading statute that does not distinguish between the different theories that may underlie a Massachusetts assault and battery conviction. Id.

"Consequently, a sentencing court may not rely on the generic 'did assault and beat' charging language to identify which particular battery offense served as the offense of conviction.  It is clear under state court construction of the statute that the statute encompasses a category of offenses which are no more than offensive touchings.  We believe, applying <u>Johnson</u>, that the government has not established the offense of harmful battery as the statute has been construed." Id.,

concluding that an offensive touching battery is not a violent felony under the force clause.

The court in <u>Holloway</u> went further, however. It recognized that under Massachusetts common law, the assault and battery statute encompasses three types of battery: (1) harmful battery, (2) offensive battery, and (3) reckless battery. Id. at 261 (citing <u>Commonwealth v. Boyd</u>, 73 Mass.App.Ct. 190 (2008)).  Against the government's argument that the court could affirm by holding that assault and battery is a violent felony under the residual clause, the court held that a reckless battery "does not typically involve purposeful conduct and thus is not similar in kind to the offenses enumerated within" the residual clause. Id. at 261.  The court cited <u>Begay v. United States</u>, 553 U.S. 137 (2008), in which the Supreme Court held that in order to fit within the residual clause, an offense must present a risk of physical injury similar to the risk presented by the clause's listed offenses and be similar "in kind" to those offenses.  An offense is similar in kind if it "typically involves purposeful, violent, and aggressive conduct." Id. at 260-261.   In addition to <u>Begay</u>, the First Circuit cited and quoted from <u>United States v. Woods</u>, 576 F.3d 400, 412-13 (7th Cir.

8

2009), a case in which the Seventh Circuit found involuntary manslaughter not to be a crime of violence, saying "[t]he residual clause encompasses only purposeful crimes; crimes with the mens rea of recklessness do not fall within its scope."  The First Circuit rejected the government's argument that a reckless battery is purposeful if the person intentionally did the act that created the risk, concluding that even though a person who commits a reckless battery may have intentionally done such acts (e.g., drink alcohol or drive), that is insufficient if the act for which he was convicted (the battery) was reckless, not intentional. Holloway therefore establishes that the pleading language "did assault and beat" is not sufficient to establish a harmful battery (which is a violent felony/crime of violence, see Holloway at 262), and that (1) an offensive battery is not a violent felony/crime of violence under the force clause, and (2) reckless battery is not a violent felony/crime of violence under either the force clause or residual clause.

The First Circuit has said that the terms "violent felony" and "crime of violence" are nearly identical in meaning, and decisions construing one term inform the construction of the other.  See Holloway, supra at 254 n.1 (1st Cir. 2011).  As noted above, after Holloway Massachusetts simple assault and battery convictions cannot be deemed violent felonies or crimes of violence purely on the basis of the charging language "did assault and beat."

Other Massachusetts convictions may also be vulnerable under

<u>Holloway</u>, based upon its ruling that reckless batteries do not qualify as violent felonies.  Beyond simple assault and battery under M.G.L. ch. 265, § 13A, other varieties of Massachusetts' assault and battery offenses may be committed in a reckless manner under state law.

There, the government must prove that the defendant was not convicted on a reckless theory.  Massachusetts courts have said that where the state legislature has not defined the assault and battery elements of another type of assault and battery crime, there is no basis for interpreting the assault and battery elements of that crime differently from the assault and battery elements in ch. 265, § 13A.  See <u>Commonwealth v. Correia</u>, 50 Mass.App.Ct. 455 (2000)(assault and battery on a public employee under M.G.L. ch. 265, § 13D encompasses reckless assault and battery), citing <u>Commonwealth v. Macey</u>, 47 Mass.App.Ct. 42, 43 (1999)(conviction under assault and battery upon a child under M.G.L. ch. 265, § 13J is satisfied by reckless conduct) and <u>United States v. Francis</u>, 24 Mass.App.Ct. 576, 579-580 (1987) (instructions on assault and battery given generally, followed by instructions relating to assault and battery on a correction officer pursuant to M.G.L. ch. 127, § 38B).  See also <u>Commonwealth v. Montes</u>, 49 Mass.App.Ct. 789 (2000) (court gave recklessness instruction in assault and battery on a police officer conviction where defendant swung shard of glass wildly and cut police officers).

Where the intent element for the assault and battery is not given

by statute, state law indicates that a defendant may be convicted on a
recklessness theory because the common law definitions applicable to
simple assault and battery apply.  One example of this would be assault
and battery on an emergency medical technician, ambulance operator or
ambulance attendant pursuant to ch. 265, § 13I.  The government
should have to then prove using Shepard documents that the defendant
was not convicted on a recklessness theory.

The First Circuit has previously held that Massachusetts state
convictions for assault and battery on a police officer qualify as crimes of
violence, most recently in United States v. Santos, 363 F.3d 19 (1st Cir.
2004).  The ruling in Santos was based largely on the career offender
guideline's residual clause and the court's judgment that the offense
posed a "serious risk of physical injury and violence." Santos, however,
was decided before Begay, and so before the Supreme Court had
articulated the requirement that to qualify under the residual clause an
offense must be "purposeful."

With Holloway's recognition that state law controls, and its view
that an offense with a mens rea of recklessness is not purposeful, there
is a strong argument that Santos was wrongly decided.  Santos also
discusses United States v. Fernandez, 121 F.3d 777 (1st Cir. 1997), an
earlier First Circuit case, which asserted both that assault and battery
on a police officer is a crime of violence, and that it involves purposeful
conduct. Fernandez cited Commonwealth v. Moore, 36 Mass.App.Ct.

11

455 (1994) for the proposition that the offense was purposeful.  The
Massachusetts Appeals Court in Correia, decided after Moore, has said
however that Moore is limited to the intentional aspect of M.G.L. ch. 265,
§ 13D and is not controlling on the alternative definition of "reckless"
assault and battery on a public employee. With Holloway's recognition
that state law controls, there is, again, a strong argument that Fernandez
was wrongly decided.

Under Massachusetts state law, the crime of resisting arrest is a
misdemeanor and not a felony.  Under M.G.L. c. 268 §32b, the
Commonwealth must prove four elements beyond a reasonable doubt:
*First:* That the defendant prevented or attempted to prevent a police
officer from making an arrest (of the defendant) (or) (of another person);
*Second:* That the officer was acting under color of authority at the
time;  *Third:* That the defendant resisted either by using, or threatening
to use, physical force or violence against the police officer (or another
person) or by using some other means which created a substantial risk of
causing bodily injury to the police officer (or another person); and *Fourth:*
That the defendant did so knowingly; that is to say, that the defendant
knew at the time that he (she) was acting to prevent an arrest by a police
officer acting under color of his (her) official authority.  Here, as in
Holloway, where its view that an offense with a mens rea of recklessness
is not purposeful, the court should conclude that the Government must
prove that the defendant acted purposefully and when the Government

fails to do so, its burden has not been met that the defendant's conviction was not based upon a theory of "recklessness."

### Criminal history/career offender guidelines improperly inflate sentence

Criminal history/career offender guidelines improperly inflate sentences. U.S.S.G. ' 4A1.3 ("If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.") and U.S.S.G. ' 4B1.1. U.S. v. Boardman, 528 F.3d 86, 87-88 (1st Cir. 2008)(holding that Kimbrough granted district courts "broader freedom" to determine whether prior convictions qualify as predicate crimes of violence for purposes of the career offender Guideline); U.S. v. Sanchez, 517 F.3d 651, 662-67 (2nd Cir. 2008)(remanded for clarification as to whether sentence was affected by judge's mistaken view that 28 U.S.C. Sec. 994(h) restricted his authority to impose a non-Guideline sentence or to grant further downward departure; district court granted 2-level downward departure because career offender offense level failed to account for defendant's lesser role in the drug conspiracy, remarked that guideline sentence of 188 months was longer than necessary and defendant could be deterred by even mandatory minimum 120 months, but that it lacked authority to impose lower sentence; holding that 994(h)'s instruction to the Sentencing Commission that it assure sentences for career offenders "at or near"

statutory maximum did not deprive district court of authority to impose shorter sentences by way of a non-Guideline sentence or departure; no statutory provision requires career offenders to be sentenced at or near the statutory maximum and district court must only consider Congress's views in context of 3553(a) considerations); U.S. v. Ennis, 468 F.Supp.2d 228, 234 & n.11 (D.Mass.2006)(observing that career offender predicates include misdemeanor convictions contrary to 28 U.S.C. Sec. 994(h), from states with misdemeanors punishable by more than one year); U.S. v. Hodges, 2009 WL 366231 (E.D. N.Y., Feb. 12, 2009) (rejecting career offender range for 43-year-old whose prior convictions were remote, non-violent, and reflected his drug addiction, and the most serious offense occurred in his early twenties, leading to a 10 year sentence that he completed); U.S. v. Moreland, 568 F. Supp. 2d 674 (S.D. W. Va. 2008) (career offender guideline range of 30 years to life rejected in favor of 120 months for a man convicted of sale and possession of small amount of cocaine base, with a non-violent record so meager that the total quantity involved in his entire criminal history "would rattle around in a matchbox", and whose predicate offenses had no temporal proximity to each other or the instant offense); U.S. v. Patzer, 548 F.Supp.2d 612 (N.D.Ill.,2008) (13 year prison term imposed for bank robbery and gun offense despite a career offender range of 346-411 months, because Patzer's priors were less serious than most predicate crimes, and in light of his difficult childhood and the improper diagnosis of and treatment for

his ADD from which his offense conduct stemmed).

For crimes committed on or after October 27, 2003, the Guidelines prohibit a downward departure in criminal history category for armed career criminals and repeat dangerous sex offenders. See USSG § 4A1.3(b) (2) (2004 ed.). In addition, for career offenders, a departure "may not exceed one criminal history category." § 4A1.3(b)(3). In the wake of Booker and Rita, such restrictions on sentencing discretion are advisory only and do not foreclose the imposition of non-guideline sentences based on consideration of all the § 3553(a) factors in a given case.

Consistent with the ineligibility of a misdemeanor for Career Offender consideration, the drafters and proponents of the Armed Career Criminal Act legislation sought to weed out minor crimes, non-felonies, and "just garden variety local crimes" from consideration as predicate offenses (Hearing on H.R. 4639 and H.R. 4768 Before the Subcommittee on Crime of the House Comm. on the Judiciary, 99th Cong. 12 (May 21, 1986) (hereinafter "ACCA Subcommittee Hearing").  Congress explicitly rejected a proposal made during the 1986 amendments to the Act that would have covered "every offense that involved a substantial risk of the use of 'physical force against the person or property of another.'" Begay, 553 U.S. at 144 (quoting Taylor, 495 at 583, in turn quoting S. 2312, 99th Cong., 2d Sess. (1986)).

Accordingly, under any iteration of this Court's analysis, a

conviction for resisting arrest is not a violent felony because it is neither similar in kind nor in degree of risk to any of the enumerated offenses nor is it a felony under Massachusetts state law.

## A SENTENCE OF 48 MONTHS IMPRISONMENT IS SUFFICIENT BUT NOT GREAT THAN NECESSARY TO EFFECTUATE THE SENTENCING GOALS OF 18 U.S.C. § 3553 (a).

The Sentencing Guidelines no longer are binding on the Court. United States v. Booker, 125 S.Ct. 738 (2005).  Instead, under 18 U.S.C. § 3553 (a), the Court should impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in Section 3553(a)(2).  In so doing, a sentencing court "may not presume that the Guidelines range is reasonable" but, instead, must using the factors set forth in § 3553 (a), "make an individualized assessment based on the facts presented."  Gall v. United States, 128 S.Ct. 586, 596 (2007).  Thus, district courts are now permitted to and, in the appropriate case, directed to consider whether disagreement with the Sentencing Commission's underlying policy results in a sentence that is unreasonably high.  Kimbrough, supra, 128 S.Ct. at 575; United States v. Boardman, 528 F.3d 86 (1st Cir. 2008); Martin, supra, 520 F.3d at 93-94.

The First Circuit has stressed that Kimbrough requires a "more holistic inquiry" than simply relying on the sentencing guidelines and that "section 3553 (a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the tread

of an overarching principle." <u>United States v. Yonathan Rodriguez</u>, 527 F.3d 221, 228 (1st Cir. 2008).  That overarching principle is to "impose a sentence sufficient but not greater than necessary."  <u>Id.</u>  In reaching a decision on what constitutes an appropriate sentence, the district court should "consider all the relevant factors" and "construct a sentence that is <u>minimally</u> sufficient to achieve the broad goals of sentencing." <u>Id.</u> (Emphasis added).

In this case, the now-familiar § 3553 (a) factors dictate a sentence of 48 months.

**1.    The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

**(a) Nature and Circumstances of Offense**

Although the offense conduct here is, by its nature, serious, the defendant was a minor participant in a conspiracy that involved a single act of brokerage for narcotics for which Mr. Parsons was paid in trade to support his addiction.  The circumstances of the offense, although serious, should be put in the context with Mr. Parsons' participation in the conspiracy and the effect that his addiction had upon his ability to control his impulses and act lawfully.

**2.    The Need for the Sentence Imposed to Promote Certain Statutory Objectives:**

**(A)    to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

The offense conduct certainly merits some punishment. In these circumstances, however, the Court should consider whether a significant sentence of forty-eight months – a sentence at the below end of the guideline range were Mr. Parsons not erroneously classified as a career offender – will be significant enough punishment which will far better reflect the seriousness of the defendant's conduct than does the sentence suggested by Probation's determination of his offense level that is mechanically derived from the applicable career offender sentencing guidelines. It cannot be seriously argued that, given the singular act by Mr. Parsons constituting his conduct in the conspiracy, balanced by what appears to be genuine interest by Mr. Parsons to learn and apply mindful cognitive behavior skills to avoiding future criminal behavior, this Court cannot craft a sentence as requested by defense that would still be sufficient enough to promote respect for the law, both specifically to Mr. Parsons and generally to the public at large. The public's right to just punishment for the offense is vindicated by a sentence that reflects his conduct and willingness to accept responsibility for his crime.

### (B)      to afford adequate deterrence to criminal conduct

Mr. Parsons was never given meaningful guidance and tools in order to get out of the cycle of criminal behavior that has been the hallmark of his adolescence, teens and twenties. Under the proposed sentence, there can be little doubt that the sentencing and incarceration he will endure, in conjunction with some of the behavior modification tools he will be

accessing, provide overwhelming deterrence to any thought of relapse in the future.

As a matter of general deterrence, the efficacy of a sentence longer than 48 months is unsupported.  Additionally, the implications of these psychological effects for parenting and family life can be profound. Mr. Parsons has two young children who could benefit from emotional and financial parental support.  He is a loving father and husband who wants to provide his children with a positive role model that he never had.

Parents who return from periods of incarceration still dependent on institutional structures and routines cannot be expected to effectively organize the lives of their children or exercise the initiative and autonomous decision-making that parenting requires. Those who still suffer the negative effects of a distrusting and hypervigilant adaptation to prison life will find it difficult to promote trust and authenticity within their children. Those who remain emotionally over-controlled and alienated from others will experience problems being psychologically available and nurturant.  Tendencies to socially withdraw, remain aloof or seek social invisibility could not be more dysfunctional in family settings where closeness and interdependency is needed. The continued embrace of many of the most negative aspects of exploitative prisoner culture is likely to doom most social and intimate relations, as will an inability to overcome the diminished sense of self-worth that prison too often instills.  Clearly, the residual effects of the post-traumatic stress of

imprisonment and the re-traumatization experiences that the nature of prison life may incur can jeopardize the mental health of persons attempting to reintegrate back into the free world communities from which they came. Indeed, there is evidence that incarcerated parents not only themselves continue to be adversely affected by traumatizing risk factors to which they have been exposed, but also that the experience of imprisonment has done little or nothing to provide them with the tools to safeguard their children from the same potentially destructive experiences. Greene, S., Haney, C., and Hurtado, A., "Cycles of Pain: Risk Factors in the Lives of Incarcerated Women and Their Children," *Prison Journal, 80*, 3-23 (2000).

> c)  **A Compassionate and Fair Sentence is Consistent with the Factors Set Forth in 18 U.S.C. § 3553 (a) and Will Result in a Sentence that is Sufficient, but Not Greater than Necessary, to Effectuate the Purposes of Sentencing**

The Court has broad discretion to question and ameliorate the career offender guideline range where, as here, the consequences of the Sentencing Commission's policy are, unsupported by past sentencing practices, and lead to a result inconsistent with the sentencing goals expressed in 18 U.S.C. § 3553 (a).  Martin, supra, 520 F.3d at 88-96 (approving 91 month downward variation from career offender guideline; "Kimbrough...opened the door for a sentencing court to deviate from the guidelines in an individual case even though that deviation seemingly contravenes a broad policy pronouncement of the Sentencing

Commission.")  See also U.S. v. Bryant, 571 F.3d 147, 153 (1st Cir.

2009)(§ 3553 (a) (factors, in context of "enormous" disparity between

career offender and otherwise applicable guideline, justified variance).

That discretion is at its apex where a particular guideline appears poorly

supported empirically, perhaps suggesting an abdication of the

Sentencing Commission's institutional role; in such a case the

sentencing court's institutional advantage makes it far better suited to

craft a just sentence.  Kimbrough, supra 128 S.Ct. at 567, 574.  See also

Gall, 128 S.Ct. at 598 (recognizing institutional advantage of experienced

district court judges who "see so many more Guidelines sentences than

appellate courts do")(citing Koon v. United States, 518 U.S. 81 (1996)).

Like many courts, this Court should give limited consideration to

the guideline range and instead impose a sentence that more adequately

considers all of the goals of sentencing as captured in the 18 U.S.C. §

3553 (a) factors.  Those factors militate a sentence of no higher than 48

months' imprisonment.

## CONCLUSION

For the foregoing reasons, this Court should impose a sentence of

48 months' imprisonment notwithstanding the draconian suggestion of

the advisory guideline sentencing range with or without the application

of career offender considerations, with a three-year period of supervised

release with the specific conditions that mandate substance abuse

counseling, emotional intervention, and intensive vocational supervision.

The Court should impose no fine.

<div style="margin-left:50%">

Respectfully Submitted,
Harry Parsons
By his counsel,

</div>

Date: 04/12/15                    /s/ Vivianne Jeruchim_____
                                  Vivianne Jeruchim, Esq.
                                  BBO #547598
                                  Jeruchim & Davenport, LLP
                                  50 Congress St., Suite 615
                                  Boston, MA  02109
                                  617/720-6047

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on April 12, 2015.

Date: 04/12/15                    /s/ Vivianne Jeruchim_____
                                  Vivianne Jeruchim, Esq.