UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
     v.                       )    Cr. No. 13-10111-DJC
                              )
3.   HARRY PARSONS,           )
     Defendant                )

                GOVERNMENT'S SENTENCING MEMORANDUM

    On January 13, 2015, Harry Parsons (hereinafter "Parsons" or the "defendant") pleaded guilty to a one-count superseding Indictment charging him with conspiracy to distribute heroin, in violation of 21 U.S.C. §846, and distribution of heroin, in violation of 21 U.S.C. §841(a)(1). For reasons to be discussed in greater detail at his sentencing hearing, the government respectfully requests that the Court sentence the defendant to 72 months in prison and six years of supervised release.

    As the Court is aware, Parsons was arrested as a result of a truncated DEA investigation into Francisco Monteiro. On February 15, 2013, agents directed a DEA cooperating witness (CW-1) to contact Monteiro by phone and attempt to purchase heroin from him. During the call, CW-1 ordered "a dollar," a slang term for 100 grams of heroin, from Monteiro.  Monteiro told CW-1 that a portion of the heroin would go to the person who lived in the house where the sale would take place ("The nigga, I lean on the nigga. Whatever he gets, the nigga, I cuff him 2, you dig what I'm saying?"). Later that day, agents

followed CW-1, Monteiro, and Manuel Lopes to Parsons' apartment in New Bedford. Once CW-1 and Lopes went inside Parsons' apartment, an unidentified drug trafficker delivered the heroin; CW-1 provided $6,250 in government funds to Lopes and Parsons; and Parsons and Lopes weighed and handed the heroin to CW-1. Parsons warned CW-1 that the heroin was especially potent:

> You're gonna get no complaints about that shit. People that boot it, better tell them, be careful, because they end up dying.

Parsons weighed the drugs, bragged about their potency, and in all likelihood obtained a portion of the drugs as a fee (the net weight of the heroin turned in by CW-1 was 96.4 grams). The Monteiro recorded phone call suggests that this was not the first time Parsons allowed his apartment to be used as a safe harbor to conduct large-scale drug sales. Moreover, Parsons committed the instant offense while on probation for a drug distribution offense.

Probation correctly determined that Lopes and Parsons had identical guideline sentencing ranges but, simply put, there is no comparison between Monteiro and Lopes, on the one hand, and Parsons on the other. Lopes is a career offender, not only as the Guidelines define the term but in the ordinary, everyday use of the phrase. Monteiro is a violent drug trafficker who committed a spectacular robbery at gunpoint. Parsons, by contrast, is a chronic New Bedford headache – he sells

2

marijuana, he destroys other people's property, he beats people up when he thinks they are "snitching" on him. PSR, ¶¶ 49, 52, 53, 54, 55, 56. Without question, Parsons' extensive history of drug and alcohol abuse, detailed in the PSR, drives much of his criminal conduct.

A 72 month sentence would serve general deterrence, promote respect for the law, and serve to specifically deter Parsons. While not the primary goal of the sentence, it would also allow Parsons to complete the 500 hour residential drug treatment program (as was noted in the PSR, Parsons was given an opportunity to complete an in-patient drug treatment plan while on pre-trial release but after several infractions he was removed from the program). It is a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. See 18 U.S.C. §3553(a).

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: /s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

    I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 13, 2015.

                                           /s/ Christopher Pohl
                                           Christopher Pohl
                                           Assistant U.S. Attorney